UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JAMES M. KANE** and                                  Chapter 13
**SUSAN A. KANE**,                                     Case No. 10-18898-JNF
    Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

**I. INTRODUCTION**

The matter before the Court is the Objection of ATL Holdings, LLC ("Holdings") to the Debtors' Claim of Homestead Exemption. Holdings has objected to the homestead exemption claimed by the Debtors, James and Susan Kane (the "Debtors"), in property located at 53 Puritan Place, Norwood, Massachusetts (the "Property") under Mass. Gen. Laws ch. 188, § 1[1] on the ground that title to the Property is in the name of Lot 14 Puritan Place, LLC (the "LLC"), a Massachusetts limited liability company, as evidenced by a deed, dated December 9, 2004, recorded in the Norfolk County Registry of Deeds. The Debtors, according to Holdings, recorded a homestead on the Property on August 16, 2010. Because the Debtors were not the owners of the Property at the time they recorded the homestead, Holdings maintains that their homestead is invalid.

---

[1] The Court notes that the Debtors' Chapter 13 case was filed, and the Debtors' claimed a Massachusetts homestead exemption, before the effective date of March 16, 2011 of the new Massachusetts Homestead Act, Mass. Gen. Laws. ch. 188, §§ 1-14.

1

The Debtors filed a Response to Holdings's Objection. They maintain that their homestead is valid because they were the only two members of the LLC, which was dissolved by the Secretary of the Commonwealth on April 29, 2009 [sic].[2] They argue that, as a result of the dissolution of the LLC, the Property reverted to them as the sole members of the LLC and their homestead is valid.

The Court held a hearing on Holdings's Objection and the Debtors' Response on January 6, 2011 and directed the parties to file briefs on the following issues: 1) what happens to the assets of a Massachusetts limited liability company following its dissolution; and 2) whether, if the Debtors' homestead is determined to be valid, it should be capped pursuant to 11 U.S.C. § 522(p). Additionally, the parties have filed an "Agreed Statement of Facts Regarding ATL Holdings, LLC's Objection to Homestead Exemption."

The facts necessary to decide this contested matter are not in dispute and neither party requested an evidentiary hearing. The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. BACKGROUND

### A. Procedural Background

The Debtors filed a voluntary Chapter 13 petition on August 17, 2010. On September 2, 2010, they filed their Schedules, Statement of Financial Affairs and other documents. On Schedule A-Real Property, the Debtors listed an ownership interest in the

---

[2] In the Agreed Statement of Facts, the parties agreed that the LLC was administratively dissolved on April 30, 2009.

Property. Using a shorthand of "TXE" for their joint interest in the Property, presumably a reference to a tenancy by the entirety, they ascribed a value to it of $710,000, subject to a secured claim in the amount of $233,988. On Schedule B-Personal Property, they did not disclose any "Stock or interests in incorporated and unincorporated businesses." On Schedule C-Property Claimed as Exempt, they claimed the Property as exempt pursuant to Mass. Gen. Laws ch. 188, § 1, adding "Purchased 2004." On Schedule D-Creditors Holding Secured Claims, the Debtors listed The Cooperative Bank with a mortgage in the amount of $233,988. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtors listed Holdings with a disputed, "foreclosure deficiency" claim in the amount of $114,284.87, as well as other claims in excess of $175,000.

On October 5, 2010, the same day they filed their Chapter 13 Plan, the Debtors amended Schedule B, to disclose the existence of the LLC between 2004 and 2009. They stated: "Debtors were the only members at all times[.] Title owner of Debtors' residence while in existence[.]" Additionally, the Debtors increased the value ascribed to a watch and wedding rings and disclosed other assets, including a rifle and a 14 foot aluminum boat.

On October 26, 2010, the Chapter 13 Trustee moved to dismiss the Debtors' Chapter 13 case for failure to file an amended Schedule B "to disclose interest in LLC & d/b/a & Independent evidence of SS#." The Chapter 13 Trustee also sought dismissal because the Debtors failed to provide business documents, including evidence of a debtor-in-possession bank account, most tax returns, and profit and loss statements. Three days

3

later, Holdings moved to convert the Debtors' Chapter 13 case to a case under Chapter 7 on grounds that they failed to disclose, and misrepresented the value of, their assets. In addition, Holdings, the United States of America on behalf of the Internal Revenue Service, and the Chapter 13 Trustee filed objections to confirmation of the Debtors' Chapter 13 plan. The Debtors failed to respond to the objections, and, on November 23, 2010, the Court sustained the objections to confirmation and ordered the Debtors to file an amended Chapter 13 plan within 30 days.

The Court granted the Debtors an extension of time to file an amended Chapter 13 Plan, and the parties have agreed to continue the evidentiary hearing on Holdings's Motion to Convert until resolution of its Objection to the Debtors' claimed homestead exemption. The Chapter 13 Trustee withdrew her Motion to Dismiss on January 6, 2011.

B. The Property

On November 29, 2004, the Debtors established the LLC by filing a Certificate of Organization with the Secretary of State of the Commonwealth of Massachusetts. The Certificate of Organization for the LLC reflects that the Debtors were both the sole members and managers of the LLC. They resided at 180 Stone Street, Walpole, Massachusetts at the time the LLC was organized. The Debtors, however, have occupied the Property since building a house at 53 Puritan Place in 2005.

The Certificate of Organization also reflected that the LLC had "no specific date of dissolution," but would be dissolved "on the death, insanity, retirement, resignation, expulsion[,] bankruptcy or dissolution of a Member . . . ." The purposes of the LLC

included the construction of residential homes, ownership, rental and operation of materials and equipment necessary to construct residential homes, and borrowing money and granting security interests to secure indebtedness.

Less than two weeks later after the formation of the LLC, the Debtors deeded the Property from themselves, as tenants by the entirety, to the LLC for consideration paid of $1.00. On November 17, 2006, the LLC granted a mortgage to The Cooperative Bank to secure a note in the sum of $240,000. Both Debtors signed the mortgage as "Managers" of the LLC and not in their individual capacities.

The parties agree that "[f]rom on or before December 1, 2005 [sic] through the present, the LLC has maintained and operated a business checking account with the Cooperative Bank." Additionally, they agree that the LLC has an Employer Identification Number issued by the Internal Revenue Service, which is listed on the business checking account of the LLC.

The LLC was administratively dissolved on April 30, 2009 by the Secretary of the Commonwealth. Although the Debtors listed the Property on Schedule A, despite the absence of title to the Property in their names, the Debtors did not list the LLC's business checking account on Schedule B.

On August 4, 2010, Holdings filed a complaint against the Debtor, Susan Kane, and the LLC, as a reach and apply defendant, in the Norfolk Superior Court, Department of the Trial Court, seeking to collect the deficiency from a mortgage foreclosure with respect to property located at 73 Leavitt Street, Brockton, Massachusetts for which Susan Kane

executed a note and mortgage in May 2007 in favor of Holdings. As noted above, the Debtors listed Holdings as an unsecured creditor with a disputed claim in the amount of $114,284.87 on Schedule F.

**III. DISCUSSION**

Resolution of Holdings's Objection to the Debtors' claimed homestead exemption requires an analysis of both bankruptcy law and state law. Bankruptcy law allocates the burden of proof with respect to the objection to the claimed exemption, *see* 11 U.S.C. § 522((l)(""Unless a party in interest objects, the property claimed as exempt on such list is exempt."); Fed. R. Bankr. P. 4003(c)("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."), while state law illuminates the ramifications of the dissolution of the LLC and the Debtors' reliance on a reverse corporate veil piercing theory. *See* Mass. Gen. Laws ch. 156C, §§ 1-77. Stated another way, because the Debtors claim the Property reverted to them upon dissolution of the LLC, the Court must determine whether they may affirmatively pierce the veil of the LLC to, in effect, regain title to the Property which they had conveyed to the LLC in 2004.

A. <u>Applicable Bankruptcy Law</u>

As this Court recognized in <u>In re Genzler</u>, 426 B.R. 407, 418 (Bankr. D.Mass. 2010), and <u>In re Bloomstein</u>, No. 09-11241-JNF, 2010 WL 4607525 (Bankr. D. Mass. Nov. 5, 2010), Fed. R. Bankr.P. 4003(c), places the burden of proof on the objecting party to establish that an exemption is not properly claimed. In <u>Genzler</u>, this Court stated: "This rule reflects the Code provision making a debtor's properly listed exemptions presumptively valid. *See* 11

U.S.C. § 522(l)." 426 B.R. at 418; *see also* In re Bloomstein, 2010 WL 4607525, at *2.

Additionally, this Court observed:

> If the objector introduces evidence effectively challenging the exemption, the burden shifts to the debtor to produce evidence in support of his claim. In re Toppi, 378 B.R. 9, 11 (Bankr. D. Me. 2007), *as amended* (Nov. 15, 2007). *See also* In re Roberts, 280 B.R. at 544–45 ("'If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper . . . the burden of persuasion, however, always remains with the objecting party.'") (quoting Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 (9th Cir.1999)).

In re Genzler, 426 B.R. at 418; In re Bloomstein, 2010 WL 4607525, at *2.

B. <u>The Exemption Scheme and Applicable State Law</u>

Section 522(b)(1) of the Bankruptcy Code permits individual debtors to "exempt *from property of the estate*" the property listed in either paragraph (b)(2) of section 522 or (b)(3) of section 522. *See* 11 U.S.C. § 522(b)(1) (emphasis supplied). Paragraph (b)(2) sets forth the federal exemptions listed in section 522(d), while paragraph (b)(3)(A) permits debtors to exempt any property "under Federal law, other than subsection (d), . . . or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition . . . ." 11 U.S.C. § 522(b)(2)(A). In order for a debtor to claim an exemption in property, the property must be property of the estate. *See* McLain v. Newhouse (In re McLain), 516 F.3d 301 (5th Cir. 2008). In McLain, the United States Court of Appeals for the Fifth Circuit observed: "'[P]roperty that is entitled to be exempted is initially regarded as estate property until it is claimed and distributed as exempt.'" 516 F.3d

at 315 (quoting Cyrak v. Poynor, 80 B.R. 75, 79 (N.D. Tex. 1987), and citing, inter alia, In re Poynor, 68 B.R. at 921 ("Even exempt property must initially be regarded as property of the estate and then claimed and distributed as exempt")).

The Debtors utilized the state exemption scheme and, in particular, claimed the Property as exempt from property of the estate under the Massachusetts Homestead Act. The Massachusetts Homestead Act, in effect at the time of the commencement of the Debtors' Chapter 13 case, provided that an estate of homestead, to the extent of $500,000 in land and buildings may be acquired by "an owner or owners of a home or one or all who rightfully possess by lease or otherwise and who occupy or intend to occupy said home as a principal residence." Mass. Gen. Laws ch. 188, § 1 (repealed).

The first issue that must be addressed is whether the real property titled in the name of the LLC is property of the estate. If the real estate located at 53 Puritan Place, Norwood, Massachusetts is not property of the estate, it cannot be claimed as exempt from property of the estate. See McLain, 516 F.3d at 315. Property of the estate, "wherever located and by whomever held," is comprised of "all legal or equitable interests of the debtor in property at the commencement of the case." 11 U.S.C. § 541(a)(1). "Absent some federal interest requiring a variant result, state law is the compass by which we ascertain the nature and scope of a debtor's property interests in a bankruptcy." McNeilly v. Geremia (In re McNeilly), 249 B.R. 576, 580 (B.A.P. 1st Cir. 2000) (citing Butner v. United States, 440 U.S. 48, 54–55 (1979)).

The parties agree that the LLC was administratively dissolved on April 30, 2009

before the declaration of homestead was recorded. Section 14 of chapter 156C provides:

> A certificate of organization shall be cancelled *upon the dissolution and the completion of winding up of a limited liability company*, or at any other time there are no members, or upon the filing of a certificate of consolidation or merger if the limited liability company is not the resulting or surviving entity in a consolidation or merger. A certificate of cancellation shall be filed in the office of the state secretary to accomplish the cancellation of a certificate of organization upon the dissolution and the completion of winding up of a limited liability company or at any other time there are no members and shall set forth:
>
> (1) the name of the limited liability company;
>
> (2) the date of filing of its certificate of organization;
>
> (3) the reason for filing the certificate of cancellation;
>
> (4) the effective date, which shall be a date certain, of cancellation if it is not to be effective upon the filing of the certificate; and
>
> (5) any other information the person filing the certificate of cancellation determines.

Mass. Gen. Laws ch. 156C, § 14 (emphasis supplied). Massachusetts law further provides that ""[a] limited liability company administratively dissolved *continues in existence*, but shall not carry on any business except that necessary wind up and liquidate its affairs." Mass. Gen. Laws ch. 156C, § 70(c) (emphasis supplied). Furthermore,

> (b) Upon dissolution of a limited liability company and until the filing of a certificate of cancellation as provided in section fourteen, the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits, whether civil, criminal or administrative, gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, discharge or make reasonable provision for the limited liability company's liabilities, and distribute to the members any remaining assets of the limited liability company, all without affecting the

9

liability of members and managers and without imposing liability on a liquidating trustee.

Id. at § 45(b). Cf. Mass. Gen. Laws ch. 155, § 51.[3] The Limited Liability Company Act requires that upon the winding up of a limited liability company,

(a) . . . [T]he assets shall be distributed as follows:

(1) to creditors, including members and managers who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited liability company, whether by payment or the making of reasonable provision for payment thereof, other than liabilities for which reasonable provision for payment has been made and liabilities for distributions to members under section thirty-one or section thirty-two;

(2) unless otherwise provided in the operating agreement, to members and former members in satisfaction of liabilities for distributions under section thirty-one or section thirty-two; and

(3) unless otherwise provided in the operating agreement, to members first

---

[3] Section 51 provides:

Every corporation whose charter expires by its own limitation or is annulled by forfeiture or otherwise, or whose corporate existence for other purposes is terminated in any other manner, shall nevertheless be continued as a body corporate for three years after the time when it would have been so dissolved for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property and to divide its capital stock, but not for the purpose of continuing the business for which it was established; provided, that the corporate existence of such a corporation, for the purposes of any suit brought by or against it within said period of three years, shall continue beyond said period for a further period of sixty days after the final judgment in the suit.

Mass. Gen. Laws ch. 155, § 51.

> for the return of their contributions and second respecting their limited liability company interests, in the proportions in which the members share in distributions.
>
> (b) A limited liability company which has dissolved shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured claims and obligations, known to the limited liability company and all claims and obligations which are known to the limited liability company but for which the identity of the claimant is unknown. If there are sufficient assets, such claims and obligations shall be paid in full and any such provision for payment made shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor. Unless otherwise provided in an operating agreement, any remaining assets shall be distributed as provided in this chapter. Any liquidating trustee winding up a limited liability company's affairs who has complied with this section shall not be personally liable to the claimants of the dissolved limited liability company by reason of such person's actions in winding up the limited liability company.

Mass. Gen. Laws ch. 156C, § 46. Finally, "[a] limited liability company interest is personal property. A member has no interest in specific limited liability company property." Id. at § 38.

In view of those principles, the dissolution of the LLC on April 30, 2009 did not terminate the existence of the LLC or effectuate a transfer of the Property to the Debtors. The LLC continued and, indeed, continues, to exist. The Debtors, as the sole members and managers of the LLC, were charged with winding up its affairs; they do not appear to have completed the task of winding up the affairs of the LLC. The undisputed facts establish that the LLC granted a mortgage on the Property to The Cooperative Bank, which the Debtors do not allege that they guaranteed. Moreover, the LLC has a business checking

11

account at The Cooperative Bank, an Employer Identification Number which is used for that account, and creditors - Holdings and The Cooperative Bank. Because Holdings and The Cooperative Bank are creditors, the Debtors, as members, are not entitled to a distribution of the equity until resolution of outstanding claims.

Despite the undisputed facts, the Debtors state the following:

> The primary business of the LLC was to construct residential homes. Upon completion of the Debtors' home in 2005, the LLC constructed no more houses and conducted no more business. As a result, there were no remaining business affairs to wind up upon its involuntary dissolution. Nor did the LLC have any creditors at the time of dissolution. The only matters left to be resolved at the point of the dissolution were the distribution of its assets. . . . Section 46 of the Limited Liability Act states that the assets of the LLC are to be distributed to the members of the LLC following the winding up of affairs and payment to creditors. The Debtors were at all times, the only members of the LLC and thus, following the dissolution and the winding up of the affairs, the property reverted back to them by operation of law.

Given the existence of the bank account in the name of the LLC and a mortgage granted by the LLC to The Cooperative Bank, for which the Debtors may or may not be personally liable as guarantors,[4] a mortgage which encumbers the Property, the Court finds

---

[4] The Debtors did not list themselves, in their capacities as Managers or Members of the LLC, as co-debtors on Schedule H-Codebtors. If the Debtors did not guaranty the mortgage, they improperly listed it as their personal obligation on Schedule D. *See* Mass. Gen. Laws 156C, § 22 which provides:

> Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability

12

that the Debtors' argument that the Property has reverted to them by operation of law, without the execution of a deed from the LLC to them, is without foundation in fact or in law. The Court finds that Holdings has met its burden of effectively challenging the claimed exemption, and the Debtors failed to produce evidence in support of their claimed exemption in the Property located at 53 Puritan Place, Norwood, Massachusetts. Indeed, the undisputed facts establish that the Property is not property of the bankruptcy estate. Rather, the Debtors' membership interests in the LLC are personal property which is property of their bankruptcy estate.

In view of the conclusion that the Property, as opposed to the Debtor's personal property interests in the LLC, is not property of the bankruptcy estate, the Court need not address the Debtors' argument that they may exempt the Property- - the real property in which they reside - - from the bankruptcy estate because they "rightfully possess by lease or otherwise" the Property and "occupy . . . said home as a principal residence." *See* In re Rodrigues, 2010 WL 716192 (Bankr. D. Mass. Feb. 23, 2010). *Cf.* In re Zmijewski, 390 B.R. 24, 25 (Bankr. D. Mass. 2008) (finding that the debtor's interest in a trust was not an interest in real estate, but an interest in personal property, citing In re Bowers, 222 B.R. 191, 193 (Bankr. D. Mass.1998); and Markham v. Fay, 74 F.3d 1347, 1361 (1st Cir.1996), and distinguishing In re Szwyd, 346 B.R. 290 (Bankr. D. Mass. 2006), *aff'd,* Houghton v. Szwyd (In re Szwyd), 370 B.R. 882 (B.A.P. 1st Cir. 2007), in which the debtor was the sole trustee

---

    company solely by reason of being a member or acting as a manager of the limited liability company.

and sole beneficiary of a trust and the doctrine of merger applied).

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order sustaining Holdings's Objection to the Debtors' claimed homestead exemption, and scheduling a hearing on the Motion to Convert.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 23, 2011